Okay, go ahead. Good morning, Your Honors, and may it please the Court. Will Brunkwell, here on behalf of the appellant, New Investments Inc. I respectfully request to reserve five minutes of my time for rebuttal. This Court should reverse the Bankruptcy Court's decision which improperly allowed Altanatural to recover damages far beyond what was legally justified. Would you be satisfied if we reversed and directed the District Court to enter, or pardon me, Bankruptcy Court, to enter judgment for $50,000 liquidated sum? Your Honor, I don't think that's an appropriate award of damages here. What is the appropriate award of damages? Zero? Yes, Your Honor. Why? We would argue that the plaintiff does not get another bite at the apple in terms of proving damages. At trial, they had the opportunity to do so. They proved damages of $350,000. You don't want a reduction of $50,000? You want a reduction of zero? Yes, Your Honor. Well, that would be a preferable result. We don't believe they get a second bite at the apple, but that would— What do you mean by second bite at the apple? If we interpret the contract as having a liquidated damage clause of $50,000 and do that, that's the apple that should have been bitten on the first time. Correct, Your Honor, and that would be an appropriate result here. But still— That would be an appropriate result. If the Court determined that there was a liquidated damages clause of $50,000 in the contract. Right. All right. Go ahead. I don't believe that that is the appropriate measure here. As the damages— You mean there were no damages? 14 parking spaces? Not worth anything? Your Honor, we are not taking the position that the underlying purchase and sale agreement was not breached. That issue is not on appeal here today. What is on appeal is whether the So, you're challenging the analysis as to diminution in value for the parking spots, correct? Yes, Your Honor. That is one of the arguments. And the expert basically testified that in his view, it would be $775,000. You were arguing for how much? $50,000 below? Uh, yes, Your Honor. There are a couple of different numbers that were in the record in terms of the actual diminution value. One was around $50,000. One was around $100,000. But you're correct in that the plaintiff's expert identified over $700,000 in damages. And the Court considered that evidence and rejected it and awarded damages at the $350,000 level. However... So that was the amount that was developed through cross-examination of the expert, correct? Yes, Your Honor. This information did come out on cross-examination of the expert. And that's where that number came from. But that does not change that this testimony, when this came out, was not an area in which the expert was qualified to testify about. And this was mere speculation on the part of the expert witness. And that does not meet the reasonable certainty standard under Washington law, which the Bankruptcy Court failed to adequately consider, identify, and apply in this case. Wasn't there testimony by the expert on cross-examination that he'd also consulted with contractors regarding building costs? No, Your Honor. I don't believe the record reflects that. If you look at the exchange in the testimony, while it does say that he spoke with contractors in the area regarding under-unit property, it certainly, I think the record demonstrates clearly that he didn't speak with contractors regarding the costs of this project. And, you know, speaking generally with a contractor about a concept in a field certainly doesn't justify an award. When this test, the record makes clear that Mr. Lukens was not a contractor, nor did he have any experience as a contractor. He didn't prepare any estimate or analysis or consult with any construction project manager, get architecture plans, or design any plans for this under-unit parking. So to base a damages award just on that speculation for something that was not included in his report, and I'd like to know at trial. But new investments didn't provide any information either, right? You didn't have an expert, you didn't propose any amount of damages for the court to consider. So how are they, how is the court to determine damages if they only had the one expert? Your Honor, I would disagree with that characterization. New investments did provide damages and an expert, as the court found a property owner is qualified to testify as an expert of their own property. And one of the principles of new investments did so testify about damages and park damages at a lower range in that $50,000 to $100,000 area. It wasn't an expert though, was it? It was the president of new investment, that's where the information came from? You're correct, Your Honor. That's where the information came from. But the bankruptcy, I believe the bankruptcy court found that, or the district court found, I should say, that a property owner is qualified to testify as an expert. Regarding their own property. But either way, I think the issue here is that Mr. Lucan's qualifications as an expert, as a property appraiser, did not qualify him to provide competent evidence regarding the construction costs of this project. And it is undisputed that the bankruptcy court's award of damages for the parking easement were based solely on this testimony. Which does not meet the reasonable certainty standard, which requires that there be factual data and competent evidence to support an award of damages. I may be confused, but the issue was that 14 parking spaces that should have gone to new investment had easements on them in favor of somebody else. True? That's correct, Your Honor. All right. The parking spaces were already constructed. What does contractor's costs have to do with that? The question really is, what is the value of those 14 spaces? Why isn't a real estate appraiser expert on that? Your Honor, a real estate appraiser is an expert in terms of testifying regarding the value of the property with and without those 14 parking spaces. But what's key to the issue here is the whole award of damages was based on the idea that Alta Natural was planning to expand the hotel and couldn't do an expansion that, you know, they didn't have specific plans for because of this parking easement. So damages was measured by a way to, the bankruptcy court here wrongly was looking at what the cost of under-unit parking would be in terms of that hotel expansion. And that's why the construction costs, and I don't think it's disputed that construction costs were the basis of the damages award. And I'd also like to touch on the issue of interest, because I think this is central to the case. And the court's award of interest was improper for two reasons. And first, new investments breach of the purchase and sale agreement by failing to provide the clean title and because of the parking easement was not a breach under the promissory note, nor did it excuse Alta Natural's performance under the note, which was a related but separate contract. Rather than requiring Alta Natural to make payment of the entirety of the purchase price at closing, new investments allowed Alta Natural to make payments over time with interest. And that was why the parties entered into the promissory note. And while the PSA may have been breached, nothing in the record indicates that the note itself was breached. And the language of the note makes clear, there's no cross-default provision allowing Alta Natural or excusing Alta Natural's performance under the note if there was a breach in the purchase and sale agreement. And the parties certainly could have included such a term that excused Alta Natural's performance. However, they didn't. And the note was a separate... Well, they suspended their performance based on the breach, right? Um, Your Honor, they did. They didn't just suspend performance. That performance was entirely discharged. Here, they stopped making payments under the note. You're correct in that. But I would say that was improper. So that's suspending performance pending the cure of the breach. But there was no breach of the note, Your Honor. While the purchase and sale agreement was breached, the note was not. And there is no provision in the note which allows suspension of performance. But the note was performance by the buyer under the purchase agreement, right? I would argue that the note is a separate and independent obligation for payment. He didn't pay cash. He paid a note. They paid cash at closing. And they could have paid the full purchase price. And I want to be clear. They didn't. They paid the note. Wasn't that performance by the buyer of the contract of purchase? Your Honor, I'd respectfully disagree, since they're two different agreements. And a note is a separate and independent obligation. And that was noted, for example, in the Tenth Circuit decision in Country World Casinos, where they noted. But if there's a breach of contract, he doesn't have to perform the contract. And the performance of the contract is the payment of the note, isn't it? Am I missing something? Your Honor, I think the payment of the note is a separate issue, is a separate contract. So they would have all rights and remedies under the purchase and sale agreement to perform. But there's no language in the note that links those two obligations. And the note is a separate obligation. However, even so, even looking at these contracts as one integrated agreement, suspension of interest does not justify a complete discharge of the obligation to pay that interest. As noted under Washington law, a party has a choice. They may either affirm the contract and sue for damages, which is what Altenatural chose to do here, or seek to rescind the contract, get restitution, and walk away. Here, the court awarded both of these inconsistent remedies by awarding Altenatural one damages for breach, as if the contract had been fully performed, but not requiring Altenatural to pay the full purchase price, which was this note plus interest. Those interest payments that were allegedly suspended were completely discharged by the court as they were not included in the damages award. So for that reason, the award of interest and damages provided inconsistent double remedies under Washington law. And if there are no further questions at this time, I'd like to reserve the remainder of my time for rebuttal. Sure. Thank you. May it please the court. My name is Roger Kindley, representing Altenatural. I think I'd like to start with the reverse of what I had intended to do and address some of the questions and the issues at the end that were just addressed by opposing counsel. And that is with regard to the transaction and the right to suspend the payments and what they referred to in their brief as recoupment. I would submit to the court that what was breached here was the warranties in the deed that was transferred. It wasn't just the purchase and sale agreement.  Under the deed that was transferred. So what we had was a default by new investments from the time the deed was transferred to my client, Altenatural. They were supposed to have the opportunity to expand this hotel. They were supposed to have those additional 14 parking spaces that we've talked about. And instead, they did not get those. That was discovered in the spring of 2014, approximately four to five months after closing, after the closing of the transaction. The bankruptcy judge here, Judge Barreca, who had, by the way, been the judge that approved the sale transaction and the negotiations in the first place. Judge Barreca was also the judge who heard the evidence, who saw the credibility of the witnesses, who saw the exhibits. And back to your point, Judge Winn, Mr. Lukens, an MAI appraiser who has 30 years in experience, who was the director of development for Starwood Hotels and Wyndham Hotels and other organizations, expert Lukens testified and submitted, which was an exhibit at trial, an MAI appraisal showing $775,000 of diminution in value. But you asked a question, Judge Winn, about, well, didn't New Investments have a number two? At page 16 of our brief, we quote New Investments president testifying at trial saying that she believed the diminution of value caused by the parking easement was $100,000. That's at page 16. It's a reference to ER 470 in the record. So what Judge Barreca had was an MAI appraiser who says $775,000, New Investments who says, well, it's only $100,000. 14 parking spaces for a hotel over in Kirkland, Washington, where parking is critical. 14 parking spaces is only worth $100,000. Judge Barreca hears trial, examines the witnesses, sees the exhibits, and he decides that $350,000 was appropriate for the parking spaces. That decision was made fully within the range of the two numbers that were given. And the case law establishes that the review standard for this court looking at a bankruptcy judge's analysis of calculation of damages is clearly erroneous. It can be overturned if it shocks the conscience. It can be overturned if it's a result of prejudice or passion. None of those apply here. And I want to focus back on what Judge Winn asked. Can I interrupt? Yes. Yes, Judge Barreca. How do you get around the $50,000 liquidated damage clause in the contract? I don't, Your Honor. That wasn't brief. That wasn't raised. I confess that. It's waived, is your point? Yes. Anything else? No. It's not waived. Do you have any other arguments why it shouldn't apply? I'm going to be completely candid with the court, as I always am. I haven't even considered it until you asked the question. I was sitting there. I wasn't trial counsel. And I wasn't briefed by the other side. Opposing counsel wasn't trial counsel. And it wasn't raised. I read all the transcripts. I read all of the district court decisions. And I never came across the reference to the $50,000 until I heard it today. So I'm not prepared to address that, Your Honor. I'd certainly be happy to brief it later if you'd like. And I apologize. Waiver. Waiver. That's where I'm going with waiver. It wasn't raised. It shouldn't be considered. I like it. I want to briefly touch again on the suspension of the payments. The payments were suspended. Washington law completely supports that proposition. The Bailey Communications case that we cite, Kim versus Park, the Dupre case, all of those cases are examples on real estate transactions where there was a breach. For example, in Kim versus Park, the seller had failed to clear up a plumbing deficiency that was deficient under the code. The court suspended the payments. Completely consistent with Washington law. While the performance was suspended, there were a couple of interest payments that weren't made. And that results in a savings to Alternatural. Should that have been backed out of the damages calculation? Uh, I don't believe so, Judge Winn, because I believe at the end of the case, as Judge Barreca went through and made his analysis, that all of that came out at the end. Remember, we also have the $65,000 that was awarded for them, the new investments, people staying in the hotel. Well, sure, but I didn't see any specific discussion of that accounted for the interest payments. There was not. I certainly agree that there was not. Nor was there a discussion of the fact that new investments kept $2.9 million that was paid in April. What was paid to them in consideration of a settlement agreement. And then they reneged and repudiated that settlement agreement. And the bankruptcy court agreed with them. But there was no calculation of should the interest on that have been also. To the extent that that is an issue, is that waived as well? Yes. Yes, it is. So the almost $3 million that was deposited, they were holding that money since 2015? No, it was immediately dispersed. And that's why Judge Marquez, on the recoupment issue, and how that should have been handled at the end, whether it was all one transaction and Judge Barreca was right to say there's no offset. The other aspect of it, just pragmatically, it would be very difficult to unwind that because there was a dispersing agent in bankruptcy. That money that was paid in 2015 was immediately dispersed. So that money was gone. And so when we get to the end and Judge Barreca says, OK, I find in favor of Alternatural, how do we handle this? Alternatural still has some payments to be made. And Judge Barreca says you can recoup those against what you owe. And it's a pragmatic result. The other thing that I want to make sure this Court understands is in the reply brief, in our brief to the Court, Alternatural pointed out that there really was no difference. The other way you would have done it is Alternatural would have paid the dispersing agent, would have made records, and that money would have then been paid back to Alternatural pursuant to the judgment. Net end result is exactly the same. In the reply brief, New Investments does not challenge that or provide any basis for why there would be any difference in that. I'd certainly be happy to answer any other questions. I know there's some other aspects of this that we could touch on, but I believe that that's all I have to say to the Court. I'm a little bit confused. With respect to the two interest payments that were not made, was that the subject of a specific award of damages by the Bankruptcy Court? No, Your Honor. It was not, Judge Barreca. Thank you. If there are no further questions, I would submit to the Court that the matter should be affirmed and attorneys' fees and costs of Alternatural should be awarded on appeal. Thank you. All right. You have almost four minutes for rebuttal. Thank you, Your Honor. I'd just like to briefly address a few points that were raised by counsel in the argument. First, with regard to the interest, I think the Court correctly noted that the interest payments were never made and were never accounted for. They are not part of the award and judgment, and the Bankruptcy Court failed to include that once damages were awarded, the interest payments should be taken into account. The $20,000 in arrest payments? Your Honor, I don't have the exact number in front of me, but it would have been significantly more than $20,000 in interest payments. And I'm confused. What arrest payments are you talking about? So when Alternatural stopped making payments under the note in November before the final maturity date of the note, which was December 31st, they missed two interest payments, and then the interest also that would have been due and payable with the final balloon payment of the principal in interest. How much were those two interest payments? Your Honor, I don't have the exact number in front of me, but I believe they were in the range of $18,000 each. Was this windfall argument raised below or in the opening brief? Raised below, I mean, to the District Court in your appeal? Yes, Your Honor, it was raised below. One of the main issues on appeal below was whether the suspension of interest payments was proper. So it was raised in that Alternatural shouldn't have been, wasn't justified in suspending payments under the note. Talking about the issues that were raised, do you agree with your learned friend that as far as the $50,000 liquidated damage clause, that was never raised as a defense to the $700,000 claim or the $350,000 award? Your Honor, you're correct that there isn't testimony in the record regarding that number, but it was raised. How was it raised? Was it raised at the bankruptcy court level by saying, Judge, you can't award $350,000, it's a liquidated damage clause here for breach and it's $50,000, period? Your Honor, I was not trial counsel at the bankruptcy court. From my review, it was in the record, obviously, as the contracts were, but I don't know if it was specifically raised. Did you raise it in your opening brief? No, we didn't, Your Honor. Okay. And second, I would just like to briefly address on this concept of a note and the underlying contract being independent obligations. It's one of the key principles of negotiable instruments and in commercial lending that a promissory note is a separate and independent obligation from a contract. In fact, if it relates to a separate agreement or there are other conditions and incorporates other agreements, it would make, it would render a note not to be a negotiable instrument. And, you know, this is supported by the case law. For example, in the Tenth Circuit's decision of In re Country World, they distinguished that case where an encumbrance was failed to be removed. However, the note itself in that case required that encumbrance to be moved. And they specifically noted and considered precedent where there were independent obligations, such as the case here. Here, there was no link in the language of the note that linked it to the purchase and sale agreement. And I see my time is running out. If the holder of the note were somebody else, you might have a good argument, the buyer for good, in good faith of the note. But the payer of the note was the party defaulting. I see my time has expired, Your Honor, but if I may, I'd be happy to answer your question. Go ahead. Thank you. So I don't think that is material here. And second, the payment was being made into the dispersing agent of our client in bankruptcy. However, the note remains an independent obligation, whether or not it is signed, unless it includes such a cross-default provision. Thank you. Okay, thank you. All right, the case of New Investments v. Alta Natural Corporation as it will be submitted, and the court thanks counsel for their argument.
judges: Bea, Nguyen, Marquez